# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JASON HUHN, on behalf of himself and all persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FACEBOOK, INC.,<br><br>Defendant. | Civil Action No.: 2:16-cv-03681-KM-JBC<br><br><br><br><br><br>*Document Electronically Filed Via ECF System* |

---

## BRIEF IN SUPPORT OF DEFENDANT FACEBOOK, INC.'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT, PURSUANT TO FED. R. CIV. P. 12(b)(6)

---

**PORZIO, BROMBERG & NEWMAN, P.C.**
100 Southgate Pkwy., P.O. Box 1997
Morristown, NJ 07962-1997
(973) 538-4006
(973) 538-5146 Fax

*Attorneys for Defendant*
Facebook, Inc.

3451300

# TABLE OF CONTENTS

Page

I.  INTRODUCTION .................................................................................1

II. BACKGROUND ..................................................................................2

III. ARGUMENT.......................................................................................4

  A.  Legal Standard..........................................................................5

  B.  California Law Applies To This Dispute And Therefore
      TCCWNA Does Not. ...............................................................6

    1.  California law presumptively controls.........................6

    2.  No exception limits the application of California law...............8

      a.  California has a substantial relationship to the
          parties and this matter......................................9

      b.  Applying California law would not violate a
          fundamental New Jersey policy.........................9

      c.  New Jersey has no "materially greater interest"
          in applying the TCCWNA to Huhn's claim. .................12

        (i)  New Jersey has no material interest in
             applying the TCCWNA to Facebook..................12

        (ii) California has a substantial interest in
             applying the choice of law provisions
             selected by technology companies
             operating nationwide. ...................................14

  C.  The SRR Is Not Subject To The TCCWNA Even If New
      Jersey Law Applies. ...............................................................17

    1.  Facebook is not a "seller, lessor, creditor, lender or
        bailee" and Huhn is not a "buyer." ...........................18

    2.  Huhn's alleged transfer of intangible consideration
        does not make him a "consumer" under the
        TCCWNA. .................................................................20

IV. CONCLUSION...................................................................................24

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

### CASES

*Abat v. Chase Bank USA, N.A.*, 738 F. Supp. 2d 1093
(C.D. Cal. 2010) ................................................................15

*Am. Leistritz Extruder Corp. v. Polymer Concentrates, Inc.*,
363 Fed. App'x 963 (3d Cir. 2010) ....................................13

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................5

*Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*,
134 S. Ct. 568 (2013) ..........................................................8

*Baker v. Inter National Bank*, No. 08-5668, 2012 WL 174956
(D.N.J. Jan. 19, 2012) .......................................................22

*Barbarino v. Paramus Ford, Inc.*, Nos. BER-L-2856-15, BER-L-
3010-15, 2015 WL 5475928 (N.J. Super. Jan. 1, 2015)....................14

*Barrows v. Chase Manhattan Mortg. Corp.*, 465 F. Supp. 2d 347
(D.N.J. 2006)......................................................................19

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .....................5

*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410
(3d Cir. 1997).....................................................................5

*C.M.D. v. Facebook, Inc.*, No. C 12-1216 RS, 2014 WL 1266291
(N.D. Cal. Mar. 26, 2014)..................................................16

*Claridge v. RockYou, Inc.*, 785 F. Supp. 2d 855 (N.D. Cal. 2011) ........21

*Campmor, Inc. v. Brulant, LLC*, No. 09-5465 (WHW),
2010 WL 1381000 (D.N.J. Apr. 1, 2010)............................6

*Davis v. Maryland Bank N.A.*, No. 00-04191, 2002 WL 32713429
(N.D. Cal. June 19, 2002) ..................................................15

3451300

*Drucker's, Inc. v. Pioneer Elecs. (USA), Inc.*, No. 93-1931, 1993 WL
431162 (D.N.J. Oct. 20, 1993)...........................................................................7

*Estrella v. Freedom Fin. Network, LLC*, No. C 09-03156 SI,
2010 WL 2231790 (N.D. Cal. June 2, 2010)........................................................9

*In re Facebook Biometric Information Privacy Litigation*, No. 15-cv-
03747-JD, ___ F. Supp. 3d ___, 2016 WL 2593853 (N.D. Cal.
May 5, 2016)...................................................................................................11, 21

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
806 F.3d 125 (3d Cir. 2015) .............................................................................21

*Greenberg v. Mahwah Sales and Serv., Inc.*, No. BER-L-6105-15,
2016 WL 193485 (N.J. Super. Jan. 8, 2016) .......................................................14

*Halprin v. Verizon Wireless Servs., LLC*, No. 07-4015 (JAP),
2009 WL 1351456 (D.N.J. May 13, 2009).........................................................12

*Instructional Sys., Inc. v. Comput. Curriculum Corp.*, 130 N.J. 324
(1992) ..............................................................................................................8, 9

*Iowa v. McFarland*, 110 U.S. 471 (1884)................................................................19

*Kearney & Trecker Corp. v. Master Engraving Co.*, 107 N.J. 584
(1987) ...................................................................................................................13

*Kent Motor Cars, Inc. v. Reynolds & Reynolds, Co.*, 207 N.J. 428
(2011) ............................................................................................................10, 13

*McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68 (2010).........................................15

*Medimatch, Inc. v. Lucent Techs. Inc.*, 120 F. Supp. 2d 842
(N.D. Cal. 2000) ...................................................................................................6

*Nat'l Fed'n of the Blind v. Target Corp.*, 452 F. Supp. 2d 946
(N.D. Cal. 2006) .................................................................................................16

*Nedlloyd Lines B.V. v. Super. Ct.*, 3 Cal.4th 459 (1992) ......................................7, 8

*Receivables Purchasing Co. v. Eng'g and Prof'l Servs., Inc.*, No. 09-
1339 (GEB), 2010 WL 56042 (D.N.J. Jan. 5, 2010)............................................6

*Santiago v. Warminster Twp.*, 629 F.3d 121 (3d Cir. 2010)...............................5, 19

3451300

*Schunkewitz v. Prudential Sec. Inc.*, 99 Fed. App'x 353
(3d Cir. 2004)............................................................................7, 11

*Shah v. Amer. Express Co.*, No. 09-00622 (JAP), 2009 WL 3234594
(D.N.J. Sept. 30, 2009) ..................................................................22

*Shelton v. Restaurant.com, Inc.*, 214 N.J. 419 (2013) .............................................18

*Song fi Inc. v. Google, Inc.*, 108 F. Supp. 3d 876
(N.D. Cal. 2015) ...............................................................................16

*Spitz v. Medco Health Solutions, Inc.*, No. 2:10-cv-01159
(DMC)(JAD), 2010 WL 4615233 (D.N.J. Nov. 3, 2010) ........................6

*Tasini v. AOL, Inc.*, 851 F. Supp. 2d 734 (S.D.N.Y. 2012)  ....................................20

*Wash. Mut. Bank, FA v. Super. Ct.*, 24 Cal. 4th 906 (2001)......................................7

*Wershba v. Apple Comput., Inc.*, 91 Cal. App. 4th 224 (2001)...............................10

*Winer Family Trust v. Queen*, 503 F.3d 319 (3rd Cir. 2007) .....................................5

## STATUTES

2012 Cal. Leg. Serv. Ch. 733 § 1(a)(1) (S.B. 1161)
(Sept. 28, 2012)...............................................................................15

Cal. Bus. & Prof. Code § 17200 ...........................................................11

Cal. Bus. & Prof. Code § 17500 ...........................................................11

Cal. Civ. Code § 1770(a)(14).................................................................10

N.J.S.A. § 1:1-1.....................................................................................19

N.J.S.A. § 56:12-15...........................................................................4, 18

N.J.S.A. § 56:12-16...........................................................................4, 11

N.J.S.A. § 56:12-15 & 16 ........................................................................18

N.J.S.A. § 56:12-17...........................................................................4, 18

## OTHER AUTHORITIES

American Heritage Dictionary of the English Language 1581
    (4th ed. 2000) ................................................................................... 19

Governor's Statement on Signing Assembly Bill No. 1660 ................................... 22

Restatement (Second) of Conflict of Laws § 187(2)(a)–(b) ..................................... 8

Restatement (Second) Conflict of Laws § 187, Cmt. f. ........................................... 9

v

# I.   INTRODUCTION

Plaintiff John Huhn's claim that Facebook's terms violate New Jersey's Truth in Consumer Contract, Warranty, and Notice Act ("TCCWNA") is meritless and should be dismissed.  Facebook's terms, called the "Statement of Rights and Responsibilities" (the "SRR"), include a limitation on consequential damages.  Declaration of Jeannie Farren in Support of Motion to Dismiss ("Farren Decl." Ex. 1).  The SRR also states that such a limitation on consequential damages may not be permitted in some jurisdictions and may not apply to users in those jurisdictions.  New Jersey law, however, *permits* limitations on consequential damages.  Huhn nonetheless claims that Facebook somehow violated the TCCWNA because Facebook should have included a further specific statement that the limitation on consequential damages *does* apply in New Jersey.  He asserts that this alleged omission entitles every Facebook user in New Jersey to $100— even though nothing in the SRR is unlawful and Facebook has not misled anyone.

But the court need not even consider whether Huhn's complaint states a claim because the SRR on which Huhn's claim is based contains a venue provision that requires any action arising under the SRR to be brought in California.  Facebook has therefore concurrently filed a motion to transfer this action to the United States District Court for the Northern District of California.  If the Court grants that motion, it can stop reading here.

1

If, however, the Court is inclined to reach the merits of this motion, it should dismiss Huhn's complaint with prejudice for two independently sufficient reasons. ***First***, the SRR specifically provides that California law applies to Huhn's relationship with Facebook and any dispute that Huhn might have regarding the SRR or with Facebook.  That contractual choice of California law is fully enforceable and precludes Huhn from bringing a claim under the TCCWNA. ***Second***, even if New Jersey law applies, Plaintiff cannot state a claim under it. TCCNWA does not—as a matter of law—apply to Facebook.  TCCWNA applies only to defendants who are "sellers, lessors, creditors, lenders, or bailees" and plaintiffs who are "aggrieved consumers."  Facebook is not a "seller" and Huhn is not a "consumer" for the most basic reason possible:  Facebook is and always has been a free service to use.

These defects are fatal.  This action was brought in the wrong court, applies the wrong law, and applies that law in the wrong way.  If the Court reaches the merits of this motion, it should dismiss the complaint with prejudice.

## II.  <u>BACKGROUND</u>

Facebook provides a service "that enables people to connect and share through mobile devices and personal computers."  Plaintiff's Class Action

2

Complaint ("Compl.") ¶¶ 11, 13 (ECF #1-2 pp.5-15).[1]  Facebook is and always has been a free service, and Huhn does not allege otherwise.  *See* Compl., *passim*.

In order to sign up for Facebook, users must agree to the SRR.  *Id.* ¶ 14. Huhn alleges that he signed up for Facebook, and concedes that he is "subject to those terms of the [SRR] deemed enforceable," and that he agreed to the SRR and its terms.  *Id.* ¶¶ 14, 36.  The SRR is Facebook's "terms of service that govern[ ] [Facebook's] relationship with users and others who interact with Facebook, as well as Facebook brands, products and services."  *See* Farren Decl., Ex. 1, at 1.

Section 15.1 of the SRR contains a provision that states that "[t]he laws of the State of California will govern this Statement, as well as any claim that might arise between you and us..."  Section 15.3 provides certain limitations on damages, *none* of which Huhn claims violate New Jersey law:

> . . . We will not be liable to you for any lost profits or other consequential, special, indirect, or incidental damages arising out of or in connection with this statement or Facebook, even if we have been advised of the possibility of such damages.  Our aggregate liability arising out of this statement or Facebook will not exceed the greater of one hundred dollars ($100) or the amount you have paid us in the past twelve months.  ***Applicable law may not allow the limitation or exclusion of liability or incidental or consequential damages, so the above limitation or exclusion may not apply to you.***  In such cases, Facebook's liability will be limited to the fullest extent permitted by applicable law.

SRR § 15.3 (emphasis added).

---

[1] For purposes of the motion to dismiss only, Facebook treats the well-pleaded factual allegations of the complaint as true.

Huhn's entire complaint is based upon the bolded sentence of Section 15.3.

He claims that sentence violates Section 16 of the TCCWNA, which states that:

> [n]o consumer contract, notice or sign shall state that any of its provisions is or may be void, unenforceable or inapplicable in some jurisdictions without specifying which provisions are or are not void, unenforceable or inapplicable within the State of New Jersey.

N.J.S.A. § 56:12-16.  Huhn does not argue that the limitation on liability in Section 15.3 is unlawful, caused him harm, or misled him in any way.  Instead, Huhn seeks to recover $100 per class member simply because the agreement stated that Section 15.3 may not apply in every jurisdiction, but did not affirmatively state that it does apply in New Jersey.  Compl., ¶¶ 62-65; N.J.S.A. § 56:12-17.

The TCCWNA's prohibitions apply only to "seller[s] lessor[s], creditor[s], lender[s] or bailee[s]."  N.J.S.A. § 56:12-15.  Similarly, the TCCWNA provides a cause of action only to "aggrieved consumer[s]."  *Id.* § 12-17.  Huhn claims that he meets the definition of "consumer" because he "bought" access to Facebook by allowing Facebook to use his name, profile picture, and content that he might post to Facebook.  Compl. ¶¶ 17-19, 40-41.

## III.   ARGUMENT

Huhn's complaint must be dismissed because it was brought in the wrong court, is premised upon the wrong law, and even then incorrectly applies that law. Huhn filed in the wrong court for the reasons set forth in Facebook's Motion to Transfer.  Huhn's complaint is premised upon the wrong law because he agreed, in

4

the very SRR upon which he bases this complaint, that California law would apply to his relationship with Facebook and any dispute arising therefrom.  And even if New Jersey law applied, Huhn applies it incorrectly because the TCCWNA does not encompass the relationship here: Facebook is not a "seller" and Huhn is not a "consumer" as the statute requires.  Facebook is a free service.

### A.   <u>Legal Standard</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In evaluating a complaint, the Court "disregard[s] legal conclusions and 'recitals of the elements of a cause of action, supported by mere conclusory statements.'"  *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010) (citation omitted).  At the same time, the Court may consider documents "integral to or explicitly relied upon in the complaint" without converting the motion into one for summary judgment.  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citation and internal quotation marks omitted) (emphasis omitted); *see also Winer Family Trust v. Queen*, 503 F.3d 319, 328 (3rd Cir. 2007).

5

**B.      California Law Applies To This Dispute And Therefore TCCWNA Does Not.**

**1.      California law presumptively controls.**

Huhn's claims fail because he admits that he agreed that California law would govern his relationship and all disputes with Facebook.  *See* SRR § 15.1.  A court must dismiss a plaintiff's state-law claims when a choice-of-law provision renders that state's law inapplicable.  Courts in this district routinely apply this principle.  *See, e.g.*, *Campmor, Inc. v. Brulant, LLC*, No. 09-5465 (WHW), 2010 WL 1381000, at *2-4 (D.N.J. Apr. 1, 2010) (enforcing Ohio choice-of-law clause and dismissing claims not recognized by Ohio courts)[2]; *Spitz v. Medco Health Solutions, Inc.*, No. 2:10-cv-01159 (DMC)(JAD), 2010 WL 4615233, at *3 (D.N.J. Nov. 3, 2010) (dismissing California-law claims because the parties' dispute was governed by New Jersey law) [3]; *see also Receivables Purchasing Co. v. Eng'g and Prof'l Servs., Inc.*, No. 09-1339 (GEB), 2010 WL 56042, at *3 (D.N.J. Jan. 5, 2010) (dismissing Arkansas-law claims where the parties agreed that New Jersey law would govern).[4]

---

[2] July 13, 2016 Declaration of Eliyahu S. Scheiman in Support of the Motion to Dismiss ("Scheiman Decl."), Ex. A.

[3] Scheiman Decl., Ex. B.

[4] Scheiman Decl., Ex. C.  California courts also apply this principle.  *See, e.g., Medimatch, Inc. v. Lucent Techs. Inc.*, 120 F. Supp. 2d 842, 862 (N.D. Cal. 2000).

6

Indeed, both New Jersey and California "clearly recognize the validity and enforceability of choice-of-law provisions in contracts." *Schunkewitz v. Prudential Sec. Inc.*, 99 Fed. App'x 353, 355 (3d Cir. 2004) (New Jersey law) (citation and internal quotation marks omitted)[5]; *see also Wash. Mut. Bank, FA v. Super. Ct.*, 24 Cal. 4th 906, 917 (2001). A choice-of-law provision "which provides that a specified body of law 'governs' the 'agreement' between the parties, encompasses all causes of action arising from or related to that agreement, regardless of how they are characterized, including tortious breaches of duties emanating from the agreement or the legal relationships it creates." *Nedlloyd Lines B.V. v. Super. Ct.*, 3 Cal.4th 459, 470 (1992).[6]

Here, the SRR provides that "[t]he laws of the State of California will govern this Statement, as well as any claim that might arise between you and us, without regard to conflict of law provisions." SRR ¶ 15.1. Huhn's claim plainly falls within the SRR's California choice-of-law provision because the claim concerns the SRR and it is between him and Facebook.

---

[5] Scheiman Decl., Ex. D.

[6] "[T]he question of whether [the choice-of-law] clause is ambiguous as to its scope . . . is a question of contract interpretation that in the normal course should be determined pursuant to [the choice-of-law clause jurisdiction's] law." *Nedlloyd*, 3 Cal.4th at 469, n.7 (citation and internal quotation marks omitted). New Jersey district courts have also followed the *Nedlloyd* rule. *See, e.g., Drucker's, Inc. v. Pioneer Elecs. (USA), Inc.*, No. 93-1931, 1993 WL 431162, at *6 (D.N.J. Oct. 20, 1993). Scheiman Decl., Ex. E.

## 2.   No exception limits the application of California law.

California's choice-of-law rules apply here because the choice-of-law rules of the chosen forum control, and the parties agreed to litigate disputes under the SRR in California. *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 134 S. Ct. 568, 583 (2013); SRR ¶ 15.1.  California has adopted Section 187(2)(b) of the Restatement (Second) of Conflict of Laws, which "reflects a strong policy favoring enforcement of such provisions." *Nedlloyd*, 3 Cal. 4th at 465.  "The law of the state chosen by the parties . . . will be applied" unless one of two narrow exceptions is met:

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties['] choice[;] or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which . . . would be the state of the applicable law in the absence of an effective choice of law by the parties.

*Id.* (quoting Restatement (Second) of Conflict of Laws § 187(2)(a)–(b)).[7]  Neither of those exceptions applies here.

---

[7] Regardless of whether California's or New Jersey's choice-of-law rules apply, the result is the same. New Jersey uses the same Restatement test for contractual choice-of-law provisions. *See Instructional Sys., Inc. v. Comput. Curriculum Corp.*, 130 N.J. 324, 341-42 (1992).

### a. **California has a substantial relationship to the parties and this matter.**

The first exception plainly cannot apply.  The Restatement test makes clear that the chosen law has a substantial relationship to the parties or the contract when the chosen state is "where one of the parties is domiciled or has his principal place of business."  Restatement (Second) Conflict of Laws § 187, Cmt. f.  Here, California has a substantial relationship to this matter because Facebook is headquartered in California.  Compl., ¶ 9; *see Estrella v. Freedom Fin. Network, LLC*, No. C 09-03156 SI, 2010 WL 2231790, at *5 (N.D. Cal. June 2, 2010) ("California . . . bears a substantial relationship to the parties and the transaction because FDR is headquartered in San Mateo [California].").[8]

### b. **Applying California law would not violate a fundamental New Jersey policy.**

The second exception cannot apply either because using California's extensive and sophisticated consumer-protection laws here would not vitiate any fundamental New Jersey policy.

As a preliminary matter, applying California law here would not violate New Jersey policy because New Jersey's policy is targeted exclusively at the regulation of "sellers" and provides a cause of action only to "aggrieved

---

[8] Scheiman Decl., Ex. F.  The same is true under New Jersey's application of the Restatement test.  *See, e.g., Instructional Sys.*, 130 N.J. at 342 ("CCC is headquartered in California, and hence California law has a 'substantial relationship to the parties.'").

consumers."   As further explained in Section C below, Facebook's provision of free online services is not a "sale," and Huhn did not become a "consumer" (*i.e.*, a buyer) when he gave Facebook his name or agreed to the SRR.   Thus, New Jersey has *no* policy—let alone a fundamental policy—that is at issue here.

Even if the TCCWNA was not limited to "sellers" and "consumers," applying California law would be consistent with New Jersey policy because California law promotes the same policy interests as the TCCWNA.  "The purpose of the TCCWNA … is to prevent deceptive practices in consumer contracts by prohibiting the use of illegal terms or warranties in consumer contracts."  *Kent Motor Cars, Inc. v. Reynolds & Reynolds, Co.*, 207 N.J. 428, 457 (2011). Assuming for the purposes of this motion only that preventing deceptive practices in consumer contracts rises to the level of a "fundamental public policy," California shares that policy: "California's consumer protection laws are among the strongest in the country."  *Wershba v. Apple Comput., Inc.*, 91 Cal. App. 4th 224, 242 (2001).  For example, the California Consumer Legal Remedies Act prohibits "[r]epresenting that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law." Cal. Civ. Code § 1770(a)(14).  This is similar to the TCCWNA's prohibition of use of illegal terms in consumer contracts.  California also specifically prohibits making or disseminating any untrue or misleading statement in connection with

10

advertising or sales of goods and services.  Cal. Bus. & Prof. Code § 17500.  This is similar to the TCCWNA's prohibition on misleading terms in consumer contracts, notices, and/or signs.  *See* N.J.S.A. § 56:12-16.  Indeed, California's consumer-protection laws may arguably be broader than the TCCWNA in that they prohibit all unfair business practices—not just illegal or misleading terms in consumer transactions. *See* Cal. Bus. & Prof. Code § 17200 (prohibiting unfair and illegal "business practices").[9]

Thus, California has robust consumer-protection laws that accomplish precisely the same goals as the TCCWNA.  Applying California law to Huhn's dispute with Facebook—as the SRR requires—could not, therefore, contravene any

---

[9] *In re Facebook Biometric Information Privacy Litigation*, No. 15-cv-03747, 2016 WL 2593853, at *11 (N.D. Cal. May 5, 2016) (Scheiman Decl., Ex. G) is inapposite.  In that case, the plaintiff alleged that Facebook's photo-tagging feature violated an Illinois law regarding biometric information.  The court found that Facebook SRR's choice-of-law provision was valid and applicable, but did not enforce it because it concluded that: the Illinois law at issue reflected a "fundamental" policy of the state; that this policy would be contravened if California law applied because California appeared to not regulate biometric information at all; and that California's interest in "providing certainty and predictability…by enforcing choice of law provisions" did not outweigh Illinois' interest.  *Id.*  Facebook respectfully disagrees with the ruling, but it does not apply here in any event because there is no indication that the TCCNWA reflects a "fundamental" policy of New Jersey; California law provides comprehensive legal rights and regulatory protections for consumers; and Facebook has demonstrated here that California has a strong interest in maintaining a regulatory and business environment that encourages the development and growth of technology companies in California.  *See Schunkewitz*, 99 Fed. App'x at 355 (holding that applying New York law would not conflict with New Jersey policy because both states placed similar restrictions on an employer's ability to withhold wages).

fundamental New Jersey public policy directed to preventing illegal or deceptive contracts.

### c. New Jersey has no "materially greater interest" in applying the TCCWNA to Huhn's claim.

As explained above, New Jersey has no interest—let alone an interest "materially greater" than California's—in applying the TCCWNA here because the statute does not regulate Facebook's provision of free online services.

But even if the TCCWNA could apply to free online service providers, New Jersey would still not have a materially greater interest than California in applying the TCCWNA in the face of a California choice of law clause.  "The question is not . . . whether New Jersey has an interest in this matter, but rather whether New Jersey's interest is materially greater than [California's.]").  *Halprin v. Verizon Wireless Servs., LLC*, No. 07-4015 (JAP), 2009 WL 1351456, at *2 (D.N.J. May 13, 2009).[10]

### (i) New Jersey has no material interest in applying the TCCWNA to Facebook.

New Jersey has no material interest in applying the TCCWNA here because Huhn's claim is not directed at the wrongs the TCCWNA was enacted to prevent. "The purpose of the TCCWNA … is to prevent deceptive practices in consumer contracts by prohibiting the use of illegal terms or warranties in consumer

---

[10] Scheiman Decl., Ex. H.

12

contracts." *Kent Motor Cars*, 207 N.J. at 457.  Yet Huhn does not allege that any provision of the SRR is actually illegal under New Jersey law.  Indeed, the specific SRR provision with which Huhn takes issue—a limitation on consequential damages—**is valid in New Jersey**.  *See, e.g., Am. Leistritz Extruder Corp. v. Polymer Concentrates, Inc.*, 363 Fed. App'x 963, 966 (3d Cir. 2010) ("In New Jersey, contractual limitations on consequential damages are permitted unless unconscionable.") [11]; *see also Kearney & Trecker Corp. v. Master Engraving Co.,* 107 N.J. 584, 592-600 (1987).  Nor does Huhn allege that he was in any way confused about which SRR provisions applied to him.  Thus, the only interest that Huhn can point to is his own interest in obtaining statutory penalties for a purported technical imperfection in a notice that comports with New Jersey substantive law.

New Jersey has no interest in such an outcome, and New Jersey courts have been critical of similar attempts to obtain "windfall" TCCWNA recoveries.  For example, in *Barbarino v. Paramus Ford, Inc.*, the plaintiff claimed that an automobile sales contract violated the TCCWNA because it failed to spell out which provisions were or were not void in New Jersey, even though the contract provisions were substantively valid.  Nos. BER-L-2856-15, BER-L-3010-15, 2015

---

[11] Scheiman Decl., Ex. I.

WL 5475928, at *3 (N.J. Super. Jan. 1, 2015).[12]  The court dismissed the plaintiff's

claim that the contract "somehow constitutes a technical violation of TCCWNA"

as an attempt to obtain a "$100 windfall payment" for each class member.  *Id; see*

*also Greenberg v. Mahwah Sales and Serv., Inc.*, No. BER-L-6105-15, 2016 WL

193485, at *4 (N.J. Super. Jan. 8, 2016).[13]  Moreover, Facebook has not located a

single case in which a court applied the TCCWNA's section 16 to a contract that

contained a specific choice-of-law provision.  It is difficult to see how New Jersey

would have an interest in requiring that California-law contracts spell out the

details of New Jersey law—particularly when California law provides similar

protections.

**(ii)**   **California has a substantial interest in applying the choice of law provisions selected by technology companies operating nationwide.**

Even if New Jersey did have some interest in awarding penalties and

attorneys' fees to plaintiffs who happened to find otherwise-valid contracts that

omitted certain magic words, California's interests in applying the parties' agreed-

upon choice of law trumps that New Jersey interest.  Every state has an interest in

"being able to assure individuals and commercial entities operating within its

territory that applicable limitations on liability set forth in the jurisdiction's law

will be available to those individuals and businesses in the event they are faced

---

[12] Scheiman Decl., Ex. J.

[13] Scheiman Decl., Ex. K.

with litigation in the future." *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 98 (2010).   These interests take on added importance when companies operate nationwide.   For this reason, federal courts have repeatedly recognized the "importance of enforcing choice of law provisions for businesses with nationwide consumers to limit the risk and expenses of litigation under different laws in every state." *Abat v. Chase Bank USA, N.A.*, 738 F. Supp. 2d 1093, 1096 (C.D. Cal. 2010); *see also Davis v. Maryland Bank N.A.*, No. 00-04191, 2002 WL 32713429, at *10 (N.D. Cal. June 19, 2002).[14]

California's interests in enforcing choice-of-law provisions with respect to California-based technology companies, like Facebook, are uniquely significant. As the California Legislature has stated, "[t]he continued vitality and success of California's technology and innovation sector of the economy is dependent on a business climate that supports the national and international nature of the Internet." 2012 Cal. Leg. Serv. Ch. 733 § 1(a)(1) (S.B. 1161) (Sept. 28, 2012).[15]   "The Internet . . . services have flourished to the benefit of all Californians . . . [as] a result of an open and competitive environment that has provided California consumers and businesses with a wide array of choices, services, and prices." *Id.* §

---

[14] Scheiman Decl., Ex. L.

[15] Scheiman Decl., Ex. M.

1(a)(4).   Thus, the Legislature has adopted an express "policy of regulating Internet-based services only as specified by the Legislature," in order to

> (1) [p]reserve the future of the Internet by encouraging continued investment and technological advances and supporting continued consumer choice and access to innovative services that benefit California [and] (2) [e]nsure a vibrant and competitive open Internet that allows California's technology businesses to continue to flourish and contribute to economic development throughout the state.
> *Id.* § 1(b).

The consistency and predictability that choice-of-law provisions afford Internet companies is an integral part of California's innovation-friendly business climate.  *See, e.g.*, *Nat'l Fed'n of the Blind v. Target Corp.*, 452 F. Supp. 2d 946, 963 (N.D. Cal. 2006) (subjecting Internet providers to "chaotic, conflicting [state-law rules]" would force them to "comply with the most stringent state standard or forgo use of the internet altogether.").  California courts have emphasized these principles in dismissing claims alleging violations of other jurisdictions' statutes. *See, e.g., Song fi Inc. v. Google, Inc.*, 108 F. Supp. 3d 876, 888 (N.D. Cal. 2015) (California choice-of-law clause required dismissal of claim under District of Columbia consumer protection statute); *C.M.D. v. Facebook, Inc.*, No. C 12-1216 RS, 2014 WL 1266291, at *5 (N.D. Cal. Mar. 26, 2014) (California choice-of-law clause required dismissal of claim under Illinois right of publicity statute).[16] California's interest in applying its law is stronger than New Jersey's here.

---

[16] Scheiman Decl., Ex. N.

For these reasons, California's consumer-protection laws should govern Huhn's dispute with Facebook. Huhn's TCCWNA claim should, therefore, be dismissed because it is based on New Jersey law rather than California law.

### C.      The SRR Is Not Subject To The TCCWNA Even If New Jersey Law Applies.

Even if Huhn were entitled to proceed under New Jersey law, his claim would still fail because the TCCWNA does not apply to it. Huhn is not a "consumer" under the statute nor is Facebook a "seller." Huhn does not allege that Facebook ever offered to sell him anything.

An analysis of the TCCWNA makes clear why Huhn's claim fails. Passed in 1981, the TCCWNA long pre-dates the advent of free-to-use, multi-purpose, online services. Though broad, it is nonetheless limited to circumstances where someone spends money for a good or service. Specifically, it provides:

> ***No seller, lessor, creditor, lender or bailee shall*** in the course of his business offer to any consumer or prospective consumer or enter into any written consumer contract or give or display any written consumer warranty, notice or sign . . . that violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee . . . . ***Consumer means any individual who buys, leases, borrows, or bails any money, property or service*** which is primarily for personal, family or household purposes.

> No consumer contract, notice or sign shall state that any of its provisions is or may be void, unenforceable or inapplicable in some jurisdictions without specifying which provisions are or are not void, unenforceable or inapplicable within the State of New Jersey.

N.J.S.A. § 56:12-15 & 16 (emphasis added). Consistent with these requirements, the TCCWNA provides for a cause of action "by the **consumer** . . . against the **seller**, lessor, creditor, lender, or bailee . . . who aggrieved him." *Id.* § 56:12-17 (emphasis added); *see also Shelton v. Restaurant.com, Inc.*, 214 N.J. 419, 429 (2013) (noting the TCCWNA is not applicable "unless plaintiffs are consumers" as defined by N.J.S.A. § 56:12-15). Huhn thus can state a claim only by alleging Facebook is a "seller, lessor, creditor, lender or bailee," N.J.S.A. § 56:12-15, and that he is a "consumer" who "buys, leases, borrows, or bails any money, property or service which is primarily for personal, family or household purposes," *id.* He cannot.

The plain meaning of both requirements shows that the TCCWNA is concerned with protecting consumers who might be deceived when spending their money. That scenario does not describe this case: Facebook does not "sell" its service to individuals, nor do people "buy" that service. Even if New Jersey law applies here, the TCCWNA does not.

### 1. **Facebook is not a "seller, lessor, creditor, lender or bailee" and Huhn is not a "buyer."**

Huhn's claim fails because he does not allege that Facebook is a "seller, lessor, creditor, lender or bailee." N.J.S.A. § 56:12-15. Nor could he: Facebook does not charge for its service. Given that Facebook did not "sell," "lease," or "lend" anything to Huhn, it logically follows that he is not a "consumer." To

18

qualify as a consumer under the TCCWNA, an individual must "buy[], lease[], borrow[], or bail[] any money, property or service which is primarily for personal, family or household purposes." *Id.* Huhn claims he is a consumer because he has "bought, borrowed, and/or leased access to the Facebook services." Compl., ¶ 41. But that assertion is a legal conclusion or bare recital of an element of a TCCWNA claim. Either way, it merits no weight. *Santiago*, 629 F.3d at 131.

What *does* merit weight is the plain, ordinary meaning of these terms. *Barrows v. Chase Manhattan Mortg. Corp.*, 465 F. Supp. 2d 347, 362 (D.N.J. 2006) (undefined TCCWNA terms should be given their ordinary meaning); *see also* N.J.S.A. § 1:1-1. And the common thread running through each one is that a consumer parts with his or her money.[17] Facebook has not been able to locate a single case where a court deemed someone to "buy," "lease," or "borrow" under the TCCWNA without actually paying money. Huhn cannot plausibly allege that Facebook "sold" or "leased" him anything because Facebook's service is free and always has been.

---

[17] The ordinary meaning of "sell" and like terms is plain: it requires payment of "money or its equivalent." American Heritage Dictionary of the English Language 1581 (4th ed. 2000); *see also Iowa v. McFarland*, 110 U.S. 471, 478 (1884) ("A sale, in the ordinary sense of the word, is a transfer of property for a fixed price in money or its equivalent.").

### 2. Huhn's alleged transfer of intangible consideration does not make him a "consumer" under the TCCWNA.

While conceding that Facebook is free, Compl., ¶ 17, Huhn implies that he "bought" Facebook's services  because he gave Facebook "consideration"—specifically, a license to use intellectual property posted on Facebook and permission to use certain identifying information. *Id.*, ¶¶ 17-19.  But Huhn fails to allege that he posted any content on Facebook (indeed, posting content is not required to use Facebook), and the only information he provided was his name, gender, birthdate, and an email address—basic information needed to use a service like Facebook's to find and connect with friends, family, and others.  Providing intangible consideration does not equate to a "purchase" under consumer-protection statutes.  *Tasini v. AOL, Inc.*, for example, squarely rejects the notion that one becomes a "consumer" by posting content online.  *See* 851 F. Supp. 2d 734, 743 (S.D.N.Y. 2012).  The *Tasini* plaintiffs were writers who produced content for websites in hopes of receiving publicity.  *Id.* at 738.  When they later sued the websites under a New York consumer-protection statute, the court flatly rejected the suggestion that the plaintiffs were "consumers" because they did not buy anything: "Those who produce content for others to consume cannot be said to be 'purchasers of goods and services.'"  *Id.* at 743 (citation and alterations omitted).  The same is true here.  Even if Huhn had alleged that he conveyed

intellectual property to Facebook—he has not—that transfer would not show there was a purchase or sale triggering consumer-protection statutes like the TCCWNA.

Nor can Huhn reframe the transfer of personal information as a "purchase." Indeed, the transfer of personal information to Facebook has been held not to constitute a "purchase or lease."  In *In re Facebook Privacy Litigation*, the court considered a consumer-protection challenge to Facebook's privacy practices where the plaintiffs contended "that their personal information constitutes a form of 'payment'" like a purchase or lease.  791 F. Supp. 2d 705, 717 (N.D. Cal. 2011). That analogy was "unsupported by law," and the court dismissed the claim with prejudice.  *Id.*  Similarly, in *Claridge v. RockYou, Inc.*, the court rejected the assertion that a plaintiff "purchase[d] or lease[d]" an online service by handing over personally identifiable information.  785 F. Supp. 2d 855, 864 (N.D. Cal. 2011).  Despite the plaintiff's insistence that his information had an "'ascertainable value,'" the court rejected the "generalized notion that the phrase 'purchase' or 'lease' contemplates any less than tangible form of payment."  *Id.*  Neither the ordinary meaning of the terms nor any precedent supported that sweeping reading. *Id.*; *see also In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 152-53 (3d Cir. 2015) (rejecting "expansive construction of 'sale'" to cover collection of user browsing history on the Internet).

Limiting the TCCWNA to traditional consumer transactions involving the exchange of money makes perfect sense in light of the statute's purpose. The state was concerned that inclusion of invalid or unenforceable terms in consumer contracts would "deceive[ ] a consumer into thinking that they are enforceable and for this reason the consumer often fails to enforce his rights." Governor's Statement on Signing Assembly Bill No. 1660.[18] Examples of these rights included the consumer's right to cancel a contract without forfeiture of deposits, right to due process in repossession of merchandise, and right to retain certain property exempted from a creditor's reach. *Id.* For similar reasons, courts have held that the TCCWNA provides a cause of action only to actual consumers and not *potential* consumers. *See, e.g., Shah v. Amer. Express Co.*, No. 09-00622 (JAP), 2009 WL 3234594, at *3 (D.N.J. Sept. 30, 2009) (TCCWNA does not give a remedy to a person who received an offending credit card solicitation)[19]; *Baker v. Inter National Bank*, No. 08-5668, 2012 WL 174956, at *10 (D.N.J. Jan. 19, 2012) (no TCCWNA cause of action where the plaintiff did not buy gift card from the defendants).[20] The common theme is that the TCCWNA is concerned with attempts to dupe consumers out of their money. These concerns are not in any way implicated where a user signs up for a free service like Facebook.

---

[18] Scheiman Decl., Ex. O

[19] Scheiman Decl., Ex. P.

[20] Scheiman Decl., Ex. Q.

In short, courts have emphatically rejected attempts to treat intangible consideration of uncertain value as evidence of a "purchase," "sale" or like transaction for consumer-protection purposes.  This Court should, too.  Huhn's inability to show he is a "consumer" is fatal to his claim.

23

## IV.   **CONCLUSION**

For the foregoing reasons, if the Court reaches the merits of Facebook's motion to dismiss, it should dismiss Plaintiff's claim with prejudice.


                                         By:   *s/ Steven P. Benenson*
                                              _____
Date:  July 13, 2016                           Steven P. Benenson
                                               Eliyahu S. Scheiman
                                               ATTORNEYS OF THE FIRM


                                               **PORZIO, BROMBERG & NEWMAN, P.C.**
                                               100 Southgate Pkwy., P.O. Box 1997
                                               Morristown, NJ 07962-1997
                                               (973) 538-4006
                                               (973) 538-5146 Fax
                                               *spbenenson@pbnlaw.com*


                                               **KEKER & VAN NEST LLP**
                                               Michael D. Celio (*pro hac vice*)
                                               Benedict Y. Hur (*pro hac vice*)
                                               Justina Sessions (*pro hac vice*)
                                               633 Battery Street
                                               San Francisco, CA 94111-1809
                                               (415) 391-5400
                                               (415) 397-7188 Fax

                                               *Attorneys for Defendant*
                                               Facebook, Inc.

3451300